IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRYAN SHEPPARD, | * |
| Plaintiff, | * |
| v. | *   Civil Action No. PX-21-1342 |
| LT. PARSON, et al., | * |
| Defendants. | * |
| | *** |

## MEMORANDUM OPINION

Plaintiff Bryan Sheppard, a Maryland inmate, filed this excessive force action pursuant to 42 U.S.C. § 1983 against Defendants Lieutenant Parsons, Sergeant Pendergast, and Corrections Officers D. Scott, R. Sartin, and D. Stegner-Youtzy.[2] Defendants move to dismiss the Complaint, or alternatively, for summary judgment to be granted in their favor. ECF No. 28. The Court has reviewed the pleadings and finds a hearing unnecessary. *See* Local R. 105.6 (D. Md. 2023). For the reasons stated below, the Motion to Dismiss or, in the Alternative, for Summary Judgment, construed as one for summary judgment, will be granted.

**I.     Background**

Because the parties submit evidence beyond the four corners of the Complaint, the Court treats the motion as one for summary judgment. Accordingly, the Court construes the evidence most favorably to Sheppard as the non-movant.

---

[2] Sheppard also names "nurse," "psych doctor," and "unknown officers" as Defendants. ECF No. 1. The Court provided Sheppard an opportunity to name those Defendants and the claims against them, but he has not. ECF No. 3. Nor is the medical contractor, YesCare, Inc. able to identify the defendant "nurse," and therefore cannot waive service. ECF No. 15. Because these Defendants have not been identified or served, the Complaint against them will be dismissed without prejudice.

A.     March 2021, Incident

The parties essentially agree that this incident began when Sheppard, while housed at Roxbury Corrections Institution, refused to move to another cell.  According to Sheppard, he told the officers that he was having a mental health episode and that he feared for his life if moved to the intended cell.  ECF No. 1.  Officers gave Sheppard "multiple direct orders" to approach his cell door so that he could be handcuffed in advance of transport.  ECF No. 28-3 at 4-5.  Sheppard refused.  One officer next warned Sheppard that failure to comply with their orders will result in his forcible removal.  When Sheppard failed to respond, the officer "delivered a burst of pepper spray . . . through the feed slot."  *Id*. at 5.  Officer Sartin next ordered Sheppard to approach for handcuffing so that he could be taken to medical for examination.  *Id*.  Sheppard complied and was transported without further incident.  *Id*. at 6-8.

After Sheppard had been treated in the medical unit, the officers attempted to escort Sheppard to his new cell.  ECF No. 28-4 at 4.  Again, Sheppard refused to go.  He sat on the floor and would not approach the door to prepare for movement.  After Sheppard repeatedly ignored the officers' commands, the Defendants entered the cell and placed Sheppard in restraints.  *Id*.  According to Officer Sartin, "[n]othing else happened."  *Id*. 6-10; ECF No. 28-9.  At the time of the incident, Sheppard reported that the officers had pepper sprayed him.  *Id*. at 6.  Sheppard also complained that the officers had taken his TV and GameCube, that he wanted those items back.  *Id*.

Contemporaneous medical records reflect that Sheppard complained of injury to his hand following the incident.  ECF No. 29. Almost three months after the altercation, Shepard was examined by a nurse for injuries sustained during the March 2021 incident.  *Id*. at 7.  The nurse observed that Sheppard could not fully extend the fourth finger on his left hand and that there was

2

a lump over the distal knuckle. *Id*. The nurse referred Sheppard for follow up with a healthcare provider. *Id*. at 8.[4]

### B. April 2021, Incident

Sheppard alleges that on April 3, 2021, he was pepper sprayed during an officer encounter stemming from his cellmate's attempted suicide. ECF No. 1 at 5. Although Sheppard alleges few details, contemporaneous reports reflect that on the morning of April 4, 2021, officers observed Sheppard's cellmate "sitting on the toilet with a makeshift rope around his neck tied to the laundry hook above his head." ECF No. 28-6 *Id*. at 3. Officer Scott ordered the inmate to remove the rope, but when he failed to respond, Scott "applied a short burst from his MK9 fogger to the [inmate's] facial area." *Id*. The inmate jumped up from the toilet, removed the rope, and hit the floor. *Id*. Sheppard and his cellmate then complied with orders to approach the cell door to be restrained. *Id*. Both were next escorted to medical, and Sheppard was treated for pepper spray exposure. ECF No. 29 at 4.

## II. Standard of Review

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor. Such motions implicate the court's discretion under Rule 12(d). *See Kensington Vol. Fire Dep't., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R.

---

[4] Defendants move to seal Sheppard's medical records. ECF No. 30. Sheppard opposes the motion because he wants the Court to be able to "see" the evidence. ECF No. 32. The Court assures Sheppard that sealing a record from the public in no way interferes with the Court's consideration of the evidence. Further, because the medical records include personal identifiers and other protected health information that should remain outside the public domain, and because nothing short of sealing would afford Sheppard sufficient protection, the Court grants the motion.

Civ. P. 12(d).  The court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, No. ELH-12-2319, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C Wright & Miller, *Federal Practice & Procedure* § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

Sheppard was placed on notice that Defendants sought summary judgment in their favor. ECF No. 28, 31.  Accordingly, the Court considers the sufficiency of the claims under the summary judgment standard.  *See, e.g., Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005).  Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

### III. Analysis

Defendants first argue the Complaint should be dismissed because Sheppard failed to exhaust administrative remedies. The Prisoner Litigation Reform Act ("PLRA"), requires that a prisoner first exhaust his claim through all available administrative remedies before filing suit. 42 U.S.C. § 1997e. Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust administrative remedies before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Corr. Health Servs.*, 407 F.2d 674, 682 (4th Cir. 2005). Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 933 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross v. Blake*, 578 U.S. 632, 636 (2016). An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aguilar-Avellaveda*, 478 F.3d at 1225); *see also Kaba*, 458 F.3d at 684.

DPSCS inmates have available an administrative grievance process for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). An inmate first must file an Administrative Remedy Procedure ("ARP"), and if denied, he must next appeal the denial to the Commissioner of Correction. If the Commissioner of Correction finds against the inmate, the inmate next must file a grievance with the Inmate Grievance Office ("IGO"). C.S. § 10-206(a);

C.S. § 10-210; COMAR 12.07.01.05B.  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).

Sheppard filed a timely Request for Administrative Remedy ("ARP") on April 6, 2021, regarding the March and April incidents.  ECF No. 28-7.  The ARP was procedurally dismissed on April 9, 2021, because the matter was under an Intelligence and Investigative Division ("IID") investigation.  *Id*.  As a matter of law, during an IID investigation into an officer's use of force, "Maryland's scheme for administrative remedies is unavailable."  *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023).  This is so because any ARP is automatically dismissed as procedurally deficient pursuant to COMAR § 12.02.28.11(B), and so any appeal of that dismissal "would be futile because the regulations demand the dismissal of such an appeal."  *Id*. at 380.  Stated otherwise, during the pendency of an IID investigation, an inmate attempting to comply with the exhaustion requirements would face "nothing but 'dead end[s]' that are 'practically speaking, incapable of use.'"  *Id*. (citing *Ross*, 578 U.S. at 643-44).  Because Sheppard's ARP was procedurally dismissed while the IID investigation was pending, administrative remedies were unavailable to him.  The Court will not grant judgment in Defendants' favor on exhaustion grounds.

Turning to the sufficiency of Sheppard's excessive force claims, the Eighth Amendment to the United States Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Generally, the amendment protects inmates against "inhumane treatment and conditions while imprisoned."

6

*Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). *See also Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citation omitted). This includes protection against the use of excessive force.

Excessive force is that which an officer uses "maliciously and sadistically to cause harm," rather than force applied as a "good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). Accordingly, to survive summary judgment, some evidence must demonstrate that the prison official acted with a sufficiently culpable state of mind," and that the "deprivation suffered [by], or injury inflicted on, the inmate was sufficiently." *Iko v. Shreve*, 535 F. 3d 225, 238 (4th Cir. 2008) (*quoting Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)).

As for the March 2021 incident, the record reflects that Defendants had used pepper spray and restrained Sheppard in response to his refusal to be handcuffed and moved to another cell. After the incident, Sheppard did not appear injured, although his finger evidently was hurt. But given Sheppard's resistance to the officers' lawful commands, no rational factfinder could conclude that their use of pepper spray or restrains constitutes excessive force. Summary judgment is granted in Defendants favor as to this claim.

For the April 2022 incident, the claim likewise fails. Indisputably, officers deployed pepper spray into Sheppard's cell because it appeared that his cellmate was preparing to hang himself. The pepper spray had not been directed at Sheppard, although he had been exposed to the spray and received timely medical treatment. But the record, construed most favorably to Sheppard, does not reflect that any officers intentionally used force which exceeded what was necessary to gain control of the situation. Thus, summary judgment is granted in Defendants' favor on this incident as well.

## IV.     Conclusion

For the foregoing reasons, Defendants' Motion to Seal is GRANTED and the Motion to Dismiss, or in the Alternative, for Summary Judgment, construed as one for summary judgment, is GRANTED.  The Complaint is also dismissed as to any unidentified or unserved parties.  A separate Order follows.

/S/
_____
Paula Xinis
United States District Judge